**William McCORMICK, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 16, 1999.

Decided July 16, 1999.

Vatche Kaloustian, Philadelphia, for petitioner.

Geoffrey D. Lawrence, Philadelphia, for respondent.

Before COLINS, President Judge, FLAHERTY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

William McCormick (Claimant) presents two issues for our review. First, whether the Workers' Compensation Judge (WCJ) abused his discretion by ordering Claimant to submit to an independent medical examination (IME) at the request of the City of Philadelphia (Employer). Second, whether the WCJ abused his discretion by suspending Claimant's workers' compensation benefits upon finding that Claimant did not have reasonable cause to excuse his failure to attend the IME. We conclude that the WCJ did not err by ordering Claimant to comply with the IME, which Claimant failed to attend without reasonable cause to excuse, and therefore affirm the order of the Workers' Compensation Appeal Board (Board), which affirmed both orders of the WCJ.

Claimant worked for Employer as a firefighter from 1956 to 1986. On December 31, 1986, Claimant sustained a work-related injury described as "nausea and pains in the arm." Employer issued a notice of compensation payable for this injury on January 18, 1987 and Claimant executed a final receipt on April 30, 1987. Thereafter,

Claimant filed a Claim Petition asserting a disabling occupational injury in the form of heart and lung disease resulting from exposure to heat, smoke, fumes and gases during his employment as a firefighter. Claimant later amended his petition to include a claim for asbestosis and a Petition to Set Aside Final Receipt. By decision and order dated April 21, 1993, WCJ Gagai granted Claimant's petitions. WCJ Gagai found that Claimant developed coronary and pulmonary conditions, and asbestos related pleural disease as a result of his employment as a firefighter. WCJ Gagai credited the testimony of Claimant's medical expert, Harry Shubin, M.D., and accepted his opinion that Claimant was totally and "permanently impaired from any employment." (WCJ Decision, April 21, 1993, Finding of Fact No 9).

By letter dated July 25, 1995, Employer notified Claimant that he was to attend an IME at the offices of Michael Kline, M.D., on August 29, 1995. Claimant did not attend this scheduled examination, which prompted Employer to file a Petition for Physical Examination of Claimant. By decision and order dated July 22, 1996, WCJ Nathanson granted the petition and directed Claimant to submit to a physical examination by Dr. Kline in accordance with § 314 of the Workers' Compensation Act (Act).[1] WCJ Nathanson found that Employer was not precluded from conducting a physical examination of Claimant since it was not seeking to terminate, modify or suspend Claimant's benefits. WCJ Nathanson further stated that Employer, as the party responsible for managing the cost of Claimant's medical treatment, made a valid request for a physical examination to determine whether Claimant's present or future medical treatment is or would be reasonable and necessary. (WCJ Decision, July 22, 1996, Finding of Fact No 9).

1. Section 314 of the Act provides that upon a petition by an employer a WCJ may require an employee receiving workers' compensation benefits to submit to a physical examination. Section 314 of the Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 651.

Claimant appealed the July 22, 1996 order to the Board and did not attend the second IME with Dr. Kline scheduled for October 8, 1996. Employer subsequently filed a petition to suspend Claimant's benefits for violating the WCJ's order without seeking a supersedeas or stay. On December 8, 1997, WCJ Nathanson granted the Suspension Petition finding that Claimant's appeal did not work as an automatic supersedeas of the order to attend the IME. Claimant also appealed the order suspending his workers' compensation benefits. The Board consolidated Claimant's appeals and denied both claims by decision and order dated December 9, 1998.

■ On appeal to this Court,[2] Claimant relies on *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 534 Pa. 327, 632 A.2d 1302 (1994) and *Fairmount Foundry v. Workers' Compensation Appeal Board (Baylor)*, 702 A.2d 373 (Pa.Cmwlth.1997), appeal denied, 553 Pa. 708, 719 A.2d 747 (1998), to support his argument that Employer's attempt to obtain an IME is barred by the doctrine of res judicata.[3] Claimant asserts that Employer's effort to obtain an IME is essentially an attempt to relitigate the level of disability resulting from his occupational disease. In response, Employer argues that it does not seek an IME for the purpose of relitigating the compensability of Claimant's occupational disease, but rather, for the purpose of assessing the medical treatment being provided to Claimant. Employer asserts that without

periodic examinations, it would be limited in assessing whether Claimant is receiving appropriate care or whether it has set aside appropriate reserves. We agree. An employer's petition to conduct a physical examination of a claimant previously found to be permanently and totally disabled does not constitute a per se attempt to relitigate the disability issue. *See McGonigal v. Workers' Compensation Appeal Board (City of Philadelphia)*, 713 A.2d 692, 694 (Pa.Cmwlth.1998). Unlike *Hebden*, where the employer sought to terminate benefits based on the assertion that the claimant was no longer disabled, in instant case, there is no identity of the cause of action between Claimant's initial claim petition and Employer's petition to compel an IME where Employer only sought information regarding Claimant's medical treatment.

■ In *Hebden*, the employer petitioned to terminate the claimant's benefits on the basis that he was no longer disabled by the occupational disease of "coal worker's pneumoconiosis." The Pennsylvania Supreme Court noted that the WCJ had accepted the claimant's evidence showing that coal worker's pneumoconiosis is irreversible. *Hebden*, 534 Pa. at 329, 632 A.2d at 1303. The Supreme Court concluded that when the employer failed to rebut the claimant's evidence that the course of the disease could not be reversed, it was thereafter precluded from any attempt to show that the claimant's disease had in fact been reversed. *Hebden*, 534 Pa. at 332, 632

---

2. Our scope of review in a workers' compensation appeal is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workers' Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992).

3. Res judicata is a principle of law that precludes the relitigation of issues decided in a

prior valid judgement in any future suit between the parties on the same cause of action. For res judicata to apply, four conditions must exist:

(1) Identity in the thing sued upon or for;
(2) Identity of the cause of action;
(3) Identity of the persons or parties to the action; and
(4) Identity of the quality of or capacity of the parties suing or sued.

*Mason v. Workmen's Compensation Appeal Board (Hilti Fastening Systems Corp.)*, 657 A.2d 1020 (Pa.Cmwlth.1995).

A.2d at 1305. Essentially, a claimant has the initial burden of producing evidence that his occupational disease is irreversible. If the claimant carries his burden, the burden shifts to the employer to rebut the claimant's evidence. *Hebden*, 534 Pa. at 329, 332, 632 A.2d at 1303, 1305. Pursuant to *Hebden*, once a final, unappealed adjudication deems a claimant's occupational disease *irreversible*, the doctrine of res judicata bars an employer from reopening the issue via a termination petition to show that the claimant's condition has improved or resolved. However, even a finding of irreversibility does not foreclose physical examination of a claimant for the purpose of identifying other suitable employment. *See McGonigal*, 713 A.2d at 694 (holding that even a finding of irreversibility under *Hebden* would not preclude an employer from seeking a physical examination since the presence of an irreversible disease does not mean that no alternate work is suitable.); *See also City of Philadelphia v. Workers' Compensation Appeal Board (Welsch)*, 728 A.2d 428 (Pa. Cmwlth.1999) ("Even if Claimant's occupational disease is irreversible, an employer is entitled to an examination to identify what alternate jobs may be available to Claimant. Otherwise, ... all occupational disease claimants would be put into an untouchable class that can never be subject to an evaluation of their physical status, work capacities or medical treatment.").

Claimant also relies on our decision in *Fairmount Foundry* to support his argument that a finding of "permanent total" disability is sufficient to establish that his disability is irreversible. *Fairmount Foundry*, 702 A.2d 373 (Pa.Cmwlth.1997). Claimant contends that "one could not imagine a disability at a higher level than total disability, or a disability that is more irreversible than a permanent disability." (Claimant's Brief at 9). Claimant's reliance on *Fairmount Foundry* in support of this argument is misplaced. The essence of our holding in *Fairmount Foundry* is that an employer may not base its request for an IME based solely upon the mere passage of time from the claimant's previous examination.[4] *Id.* at 374. Moreover, we addressed Claimant's argument that permanent-total disability equates to irreversibility in *Mason v. Workmen's Compensation Appeal Board (Hilti Fastening Systems Corp.)*, 657 A.2d 1020 (Pa. Cmwlth.1995). In *Mason*, the claimant argued that his occupational disease was irreversible by virtue of the WCJ's finding of permanent and total disability. We rejected this argument in concluding that the claimant's medical expert did not testify that his injury was irreversible and that a finding of a permanent disability is not, in the Court's view, the equivalent of testifying that the injury is irreversible. *Mason*, 657 A.2d at 1023–1024.

We now turn to Claimant's second argument. Claimant argues that the WCJ's order directing him to attend the IME was

---

**4.** In *Conaway v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 728 A.2d 1037 (Pa.Cmwlth.1999), we reviewed our decisions in *Hebden, Fairmount Foundry*, and *McGonigal* regarding an employer's right to an IME following a finding of disability resulting from an occupational disease. In *Conaway*, which involved a claimant disabled as a result of his career as a firefighter for the City of Philadelphia, we summarized the holdings in these cases in the following passage:

> If a Claimant has an irreversible occupational disease, it does not mean that an employer is precluded from requesting a

medical examination. However, if the employer requests the medical examination based on the mere passage of time without stating that it is [to establish the claimant's fitness for other employment] and not to relitigate whether the disease is an irreversible work-related disability, it is not an abuse of discretion for the [WCJ] to deny the request. On the other hand, when the employer asserts that it is requesting the physical examination to determine if the claimant is fit for other employment ... and is not attacking a prior decision as in *Hebden*, the [WCJ] must grant the request [for an IME].

*Id.* at 1042–43.

a nullity since the Act vested jurisdiction to enter such an order in the Board. We disagree. In 1993 the General Assembly amended the Act through passage of the Act of July 2, 1993, No. 44, P.L. 190 (Act 44). Prior to Act 44, § 314 of the Act provided that the Board, rather than the WCJ, could issue an order compelling a claimant to attend an IME and order suspension of a claimant's benefits if he failed to attend. 77 P.S. § 651. Act 44 implemented, *inter alia,* a procedural amendment of § 314 by transferring jurisdiction to issue orders compelling physical examination of claimants from the Board to a designated WCJ, with all substantive provisions of § 314 remaining unchanged. 77 P.S. § 651. Section 314 of the Act, as amended, provides that where a claimant through refusal or neglect, without reasonable cause or excuse fails to submit to an IME ordered by the WCJ, he or she shall be deprived of any right to compensation during the continuance of such refusal or neglect. 77 P.S. § 651. Claimant's compensation claim was initially granted on April 30, 1987. Subsequently, on July 22, 1996, WCJ Nathanson granted Employer's Petition for Physical Examination of Claimant. Claimant decided to appeal the order rather than attend the scheduled IME. Claimant contends that the 1993 amendments to the Act may not be retroactively applied to his claim, and therefore, the Board rather than the WCJ had jurisdiction to issue an order compelling him to attend the IME.

In *Jaquay v. Workers' Compensation Appeal Board (Central Property Services),* 717 A.2d 1075 (Pa.Cmwlth.1998), we addressed the question of retroactive application of statutory provisions as follows:

> A retroactive law is one which relates back to and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired. Furthermore, Section 1926 of the Statutory Construction Act of 1972 provides that: "No statute shall be constructed to be retroactive unless clearly and manifestly so intended by the General Assembly."
>
> Notwithstanding the above, a statute may be retroactively applied where it is merely procedural and does not alter any substantive rights. A substantive right is implicated when the retroactive application of a statute imposes new legal burdens on past transactions. On the other hand, procedural statutes establish the method for enforcing a right but have no bearing on whether a claimant has a legal entitlement to relief under the facts as they exist in a particular case.

*Id.* 717 A.2d at 1077 (citations omitted).

■ Act 44 only revised § 314 by changing the tribunal before which an employer must petition to obtain an order to compel a claimant to submit to an IME. Requiring employers to petition the WCJ rather than the Board for such an order in no way affects a claimant's substantive right to workers' compensation benefits. Since procedural statutory provisions may be retroactively applied, Claimant's jurisdiction argument is without merit.

■ Alternatively, Claimant argues that his appeal of the WCJ's order effectively stayed the order compelling the IME, which served as a reasonable cause and excuse for his failure to attend the scheduled IME. Claimant essentially argues that his appeal of the WCJ's order to the Board functioned as an automatic supersedeas. We disagree. The Board correctly addressed this argument in concluding that "the mere filing of an appeal generally does not automatically function as a supersedeas or stay and, in particular, there is no provision in the [Act] or applicable regulations which provides that an appeal by [a claimant] operates as an automatic stay of the [WCJ's] order...."[5] Absent a spe-

---

5. Board Decision and Order, December 9, 1998, at 11. See 2 G. Ronald Darlington, et al., Pennsylvania Appellate Practice, §§ 1701:20 (2d ed. 1998) (After an appeal

cific statutory provision granting an automatic supersedeas when an appeal is taken, we conclude that the WCJ did not commit an abuse of discretion in determining that Claimant's filing of an appeal did not constitute a reasonable cause or excuse for his failure to attend the IME on October 8, 1996.

Accordingly, we affirm the Board's order upholding WCJ Nathanson's July 22, 1996 order compelling Claimant to attend the IME and WCJ Nathanson's December 8, 1997 order suspending Claimant's workers' compensation benefits effective October 8, 1996 for failing to appear at the IME as ordered.

### ORDER

AND NOW, this 16th day of July, 1999, the order of the Workers' Compensation Appeal Board, dated December 9, 1998, is hereby affirmed.

has been filed, the trial court or other government unit may enforce the order appealed from unless the order has been superseded.... Generally, an appeal to an appellate court does not act as an automatic supersedeas. However, certain parties, as delineated in Pa. R.A.P 1736, do have the benefit of an automatic supersedeas when they appeal but such parties are limited to government entities, certain taxpayers and appellants who file security in a lower court.).