# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lloyd Edinger,               :
            Petitioner     :
                    :
         v.             :   No. 916 C.D. 2021
                    :   Submitted: March 25, 2022
Rhodes Salvage/Edward Rhodes  :
(Workers' Compensation Appeal  :
Board),                :
           Respondent    :

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
               **HONORABLE ELLEN CEISLER,** Judge
               **HONORABLE STACY WALLACE,** Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**     **FILED: April 25, 2023**

Lloyd Edinger (Claimant) petitions for review of a July 27, 2021 Order of the Workers' Compensation Appeal Board (Board), reversing a decision by a Workers' Compensation Judge (WCJ), suspending Claimant's benefits, and granting Rhodes Salvage/Edward Rhodes (Employer) a dollar-for-dollar credit against Claimant's future benefits from September 9, 2019, the date Claimant failed to attend a scheduled impairment rating evaluation (IRE), until Claimant attends an IRE. Before this Court, Claimant does not dispute that he did not attend the IRE but instead argues the Board erred because Employer's Suspension Petition was premature, pursuant to *Bechtel Power Corporation v. Workmen's Compensation Appeal Board (Miller)*, 452 A.2d 286 (Pa. Cmwlth. 1982), as Claimant was appealing a separate WCJ order directing that he attend the IRE at the same time. Claimant also argues the Board erred in concluding Claimant had to seek

supersedeas because the WCJ did not suspend Claimant's benefits. Finally, Claimant asserts the Board exceeded the scope of its authority when it ordered the dollar-for-dollar credit against future compensation benefits until Claimant attended the IRE and failed to consider Claimant's financial circumstances in making the award.[1]  Upon review, we affirm.

## I.    BACKGROUND

Given the issues involved and the parties' arguments, it is necessary to review the chronology of events leading up to this appeal.  On May 9, 2008, Claimant suffered a work injury, specifically, lumbar spondylosis with radiculopathy, while in the course of employment with Employer.  (Certified Record (C.R.) Item 19, 8/6/19 WCJ Decision, Finding of Fact (FOF) ¶ 1.)  On April 11, 2019, Employer requested Claimant submit to an IRE pursuant to newly enacted Section 306(a.3) of the Workers' Compensation Act (WC Act), which was added by Section 1 of the Act of October 24, 2018, P.L. 714, No. 111 (Act 111).[2]  (*Id.* ¶ 3.)

An IRE was scheduled for May 28, 2019, and Claimant was notified of the appointment.  (8/6/19 WCJ Decision, FOF ¶ 4.)  Claimant's counsel notified Employer that Claimant would not attend the scheduled IRE because he believed Act 111 was unconstitutional, similar to the former IRE provision.  (*Id.*)  On May 28, 2019, Employer filed a Petition for Examination seeking an order from the WCJ to compel Claimant to attend an IRE, which the WCJ granted by Order dated August

---

[1] We have reordered Claimant's arguments for ease of discussion.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 511.3.  The General Assembly enacted Act 111 after the previous IRE provisions in the WC Act, former Section 306(a.2) of the WC Act, *formerly* 77 P.S. § 511.2, which were added by Section 4 of the Act of June 24, 1996, P.L. 350, was struck down as an unconstitutional delegation of legislative authority in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017).  Act 111 repealed former Section 302(a.2).

5, 2019. In the decision accompanying the order, the WCJ stated that "Claimant, while having a legally cognizable legal argument as to why he should not attend the IRE . . . , the law, as written, obliges him to attend."[3] (*Id.* ¶ 6.) The WCJ further explained that "[t]he failure of [] Claimant to attend a properly scheduled [IRE] would potentially preclude a legal determination regarding the propriety of Act 111" and "presupposes that [] Claimant's impairment rating would be less than 35%," which, under Act 111, would result in a change in Claimant's disability status from total to partial disability. (*Id.* ¶ 7.) The WCJ also stated that the "[i]nterest of judicial economy dictate[s] that the case would be in the proper posture for litigation once the [IRE] is conducted and [] Employer . . . attempts to modify [] Claimant's benefits based upon the results of that exam." (*Id.* ¶ 8.)

On August 12, 2019, Employer sent Claimant a letter advising the IRE had been rescheduled to September 9, 2019. (C.R. Item 21; *see also* C.R. Item 22.) On August 15, 2019, Claimant appealed the August 6, 2019 Decision ordering the IRE to the Board. (C.R. Item 13.) On August 26, 2019, Employer filed a Motion to Quash Claimant's Appeal with the Board, alleging the WCJ's order directing Claimant attend the IRE was an interlocutory order. (C.R. Item 14.)

On September 9, 2019, Claimant did not appear for the IRE. (C.R. Item 20; *see also* 12/18/19 WCJ Decision, FOF ¶ 5.) On September 27, 2019, Employer filed a Suspension Petition, alleging Claimant failed to appear for the IRE, as ordered. (C.R. Item 2.) On December 3, 2019, Claimant filed an answer, wherein Claimant asserted the Suspension Petition was "barred and collaterally estopped" because "this identical issue is currently on appeal." (C.R. Item 4.) Accordingly, Claimant requested that the Suspension Petition be dismissed with prejudice and sought an

---

[3] The WCJ also noted he lacked the authority to address the constitutionality of Act 111. (8/6/19 WCJ Decision, FOF ¶ 6.)

3

award of counsel fees. (*Id.*) In addition, Claimant stated he would attend a rescheduled IRE if it was "stipulated that he [wa]s not waiving any rights to object to the nature of the exam on constitutional or any other grounds." (*Id.*) The Suspension Petition was assigned to the same WCJ who issued the August 6, 2019 Order directing Claimant to attend the IRE. (C.R. Item 3.)

On December 18, 2019, the WCJ issued a Decision denying Employer's Suspension Petition. The WCJ recounted the procedural history of the matter and noted that the Board had yet to act on Claimant's appeal of the WCJ's prior order directing Claimant attend the IRE or Employer's Motion to Quash related thereto. (12/18/19 WCJ Decision ¶¶ 1-8.) As a result, the WCJ found he lacked the authority to act on the Suspension Petition, explaining that any such decision might conflict with the Board's and would "divest [] Claimant of his right of appeal to the . . . Board," as guaranteed by the WC Act. (*Id.* ¶¶ 9-10.) In particular, the WCJ found this Court's decision in *Bechtel* "persuasive," stating:

> While the parties would have the ability to pursue other [p]etitions pending the [d]ecision of the . . . Board, [] Employer's [Suspension] Petition goes to the heart of the issue currently pending before the . . . Board. [] Employer would have the right to have [] Claimant attend a physical examination and an expert interview for purposes of filing a Modification Petition based upon earning capacity. Likewise, [] Claimant would have available to him the right to file a Petition to Review to amend the description of injury. Petitions of this type could not be adversely impacted by any [d]ecision rendered by the . . . Board on the pending Petition.

(*Id.* ¶ 11.)

The WCJ further found "[t]he appeal provides [] Claimant with a reasonable excuse for failing to attend the . . . IRE." (*Id.* ¶ 12.) Accordingly, the WCJ denied

4

Employer's Suspension Petition.[4]   Employer timely appealed to the Board on January 3, 2020.

Shortly thereafter, the Board issued its January 7, 2020 order quashing Claimant's appeal of the WCJ order directing him to attend the IRE, concluding it lacked jurisdiction over the interlocutory order.  *See Edinger v. Workers' Comp. Appeal Bd. (Rhodes Salvage/Edward Rhodes)* (Pa. Cmwlth., No. 127 C.D. 2020, filed June 30, 2020), slip op. at 3 (single-judge op.) (*Edinger I*).  This Court affirmed the Board's order on June 30, 2020, holding "precedent clearly holds that a WCJ's order directing a claimant to attend an IRE is interlocutory and unappealable."  *Id.* at 5.[5]

On July 27, 2021, the Board issued its Opinion and Order, which is the subject of the instant appeal.  The Board concluded the WCJ erred in failing to grant the Suspension Petition where Claimant did not comply with a WCJ order directing him to attend an IRE and did not request supersedeas while Claimant's appeal of that order was pending before the Board.  (Board Opinion (Op.) at 4.)  The Board explained Employer made the request for Claimant to attend the IRE pursuant to Section 306(a.3)(6) of the WC Act, and when Claimant initially refused, the WCJ ordered Claimant's attendance pursuant to Section 314 of the WC Act, 77 P.S. § 651.  (Board Op. at 5.)  The Board further stated that, consistent with Section 314, when a claimant refuses to attend an examination ordered by a WCJ, "without reasonable cause or excuse," the remedy is to deny the claimant "'the right to compensation'

---

[4] The WCJ also denied Claimant's request for unreasonable contest fees.

[5] Before the Court, Employer also filed a motion to quash, which the Court treated as an application for summary relief pursuant to Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1532(b).  *Edinger I*, slip. op at 1.  In doing so, the Court explained that quashal was inappropriate because the appeal of the Board's decision to this Court was not interlocutory, untimely, or otherwise resulted in the Court lacking jurisdiction.  *Id.* at 1 n.1.

5

during the period of time that [the claimant] continues to refuse or neglect to attend an examination." (*Id.* (quoting 77 P.S. § 651).)

Here, the Board determined that, contrary to the WCJ's conclusion that Claimant had a "right to appeal," Claimant did not because the order from which he appealed was interlocutory and, therefore, not appealable. (*Id.* at 5-6.) The Board also concluded that an appeal of an order to attend an examination under Section 314 does not operate as an automatic supersedeas and an appeal of an interlocutory order is not a reasonable excuse for noncompliance with an order directing attendance. (*Id.* at 6 (citing *Bradley v. Workers' Comp. Appeal Bd. (County of Delaware)*, 919 A.2d 293 (Pa. Cmwlth. 2006), and *McCormick v. Workers' Comp. Appeal Bd. (City of Philadelphia)*, 734 A.2d 473 (Pa. Cmwlth. 1999)).) By concluding the appeal was a reasonable excuse for failing to attend the IRE, the Board concluded "the WCJ misapplied the law, resulting in an abuse of discretion." (*Id.*)

The Board further held that the WCJ erred in applying *Bechtel*, stating that "[u]nlike a case involving a normal appeal, Claimant here attempted to have the Board and [this] Court review a WCJ's [o]rder that was interlocutory and non-appealable," and thus, "[t]here was never an appeal pending before the reviewing authorities that could have been impacted by the litigation of the Suspension Petition, or vice versa," which is "[t]he evil" that *Bechtel* aimed to avoid. (*Id.* at 7.) Assuming Claimant had a right to appeal the order directing him to attend the IRE, the Board stated Claimant did not seek supersedeas to stay his obligation to attend the IRE. (*Id.* at 8.) The Board continued:

> The issues in the Suspension Petition are different than those decided in the prior litigation. They are: 1) did Claimant attend the IRE that was scheduled for September 9, 2019; and 2) if not, did he have a

6

reasonable excuse?  The answer to the first question is no, as a matter of undisputed fact.  The answer to the second question is no, as a matter of law.

(*Id.*)

The Board explained that if Claimant's and the WCJ's reasoning were accepted, "it would necessarily mean that Claimant could keep appealing the [o]rder to attend an IRE all the way to the Supreme Court and all the while prevent [Employer] from obtaining an IRE and/or pursuing a suspension of benefits for months or perhaps even years," which "is not an outcome sanctioned by *Bechtel*." (*Id.* at 8-9.)

Based on the above, the Board held, as a matter of law, that Claimant had neither a right to appeal the order directing him to attend the IRE nor a reasonable basis for failing to attend, and the Suspension Petition was not precluded by Claimant's interlocutory appeal.  (*Id.* at 9.)  Consequently, the Board reversed the WCJ's Decision dismissing the Suspension Petition and ordered Claimant's disability benefits suspended as of the date he was supposed to attend the IRE.  (*Id.*) Further, because Employer was not entitled to reimbursement through the Supersedeas Fund, the Board held that, "[i]n order to avoid Claimant's unjust enrichment, [Employer]'s sole remedy in this situation is to recoup the overpayment of disability benefits during the period of Claimant's suspension by taking a dollar-for-dollar credit against Claimant's future compensation payable."  (*Id.* (citing *Bureau of Workers' Comp. v. Workmen's Comp. Appeal Bd. (Lukens Steel Co.)*, 524 A.2d 1041 (Pa. Cmwlth. 1987), and *Linton v. Workers' Comp. Appeal Bd. (Amcast Indus. Corp.)* (Pa. Cmwlth., No. 1707 C.D. 2007, filed March 26, 2008)).)[6]

---

[6] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b)(1) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b)(1), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Claimant filed a timely Petition for Review.

## II.   PARTIES' ARGUMENTS

On appeal,[7] Claimant asserts numerous errors by the Board.  First, Claimant argues the Board erred in distinguishing *Bechtel* and, in doing so, misapplied statutory authority and case law.  According to Claimant, *Bechtel* controls this matter and because Claimant's appeal of the WCJ order directing him to attend an IRE was pending before the Board, the WCJ properly dismissed the Suspension Petition. (Claimant's Brief (Br.) at 11-12.)  Claimant also argues the Board erred in awarding a dollar-for-dollar credit against future compensation benefits.  In support of this argument, Claimant asserts the Board lacked authority to issue such an award under Section 413(a) of the WC Act, 77 P.S. § 771, because recoupment or restitution here would be an equitable remedy, and the Board lacks equitable powers unless there is a mathematical error or misunderstanding contained in any agreement between the parties or the notice of compensation payable (NCP), which here there was not. (Claimant's Br. at 13-14 (citing *Fahringer, McCarty & Grey, Inc. v. Workmen's Comp. Appeal Bd. (Green)*, 529 A.2d 56 (Pa. Cmwlth. 1987)).)  Assuming the Board did have such authority, Claimant argues that the Board erred in concluding Claimant should have sought supersedeas of the WCJ's order directing him to attend the IRE, reasoning he could not have asked for supersedeas as his benefits had not been suspended.  (*Id.* at 15-16.)  Finally, Claimant contends the Board erred as it did not consider Claimant's financial circumstances before ordering the relief, which is also contrary to *Fahringer* and the humanitarian purposes behind the WC Act.  (*Id.*

---

[7] Our review is limited to determining whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence.  *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000).

8

at 14-15.) Here, Claimant asserts the relief "is more punitive than remedial," explaining that had he attended the September 9, 2019 IRE, at worse, Claimant's benefit amount would not have been reduced; instead, his disability status would have been modified from total to partial. (*Id.* at 15.)

Employer responds that this Court has previously determined that an appeal from a WCJ order requiring a claimant to attend a medical exam is interlocutory and does not provide a reasonable excuse for not attending because such an appeal does not operate as an automatic supersedeas. Employer contends *McCormick* is analogous to the instant matter and thus controls. Employer also argues that *Bechtel* involved a "narrow" issue, specifically "whether an employer should be permitted to appeal a WCJ's finding of disability, alleging that no disability occurred, while simultaneously petitioning for termination of benefits alleging that disability had ceased." (Employer's Br. at 9.) Here, "the issues are not identical," and "Employer is not trying to 'relitigate' anything." (*Id.* at 10.) Rather, "this case involves different parties pursuing different relief at different levels." (*Id.*) Employer notes that at the time the Board issued its Order, this Court had already determined the order directing Claimant to attend the IRE was interlocutory and nonappealable in *Edinger I.* (*Id.* at 11-12.) Thus, Employer asserts the Board's Order suspending Claimant's disability benefits was proper. Employer also argues that the dollar-for-dollar credit is appropriate and consistent with precedent. To the extent Claimant argues financial hardship, Employer argues "Claimant brought that hardship upon himself" by refusing to attend the IRE he was ordered by the WCJ to attend. (*Id.* at 12.) According to Employer, "[t]he humanitarian purposes of the [WC] Act are not served by allowing claimants to exploit the system in this manner." (*Id.* at 12-13.)

9

In a reply brief, Claimant asserts Employer could have immediately stopped paying Claimant's disability benefits but chose not to do so, and under Section 413(a), "stopping benefits in the **future** for conduct that occurred in the past was **not** permissible." (Claimant's Reply Br. at 5-6 (emphasis in original).)[8] Claimant asserts this interpretation of Section 413(a) is "buttressed" by Section 314(a) of the WC Act, which "reads in the present tense, not the past tense." (*Id.* at 6.) Claimant also reasserts that the Board failed to consider Claimant's financial circumstance before ordering the relief it did. (*Id.* at 7-8.)

## III. DISCUSSION

Preliminarily, we briefly review the underlying statutory framework to help understand the context of this litigation. Under Section 306(a.3)(1) of the WC Act, after a claimant receives 104 weeks of total disability benefits, an employer/insurer

---

[8] Claimant relies upon the Court's memorandum opinion granting supersedeas for this argument. *See* 12/29/21 Memorandum Opinion at 8-9 (single-judge op.) Therein, the Court held that Claimant satisfied the first criterion for supersedeas relief under *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 467 A.2d 805 (Pa. 1983), as "although the Board may have ultimately made the correct decision regarding the dollar-for-dollar credit," Claimant made a strong showing of success on the merits as to whether the Board "erred in failing to first consider his financial situation before crafting such a remedy." *Id.* at 8 (emphasis in original). The Court also explained there are competing interpretations of Section 413(a) of the WC Act and under one interpretation, "Employer was authorized to *immediately* stop paying [Claimant] benefits" when he did not attend the IRE, which resulted in Employer being potentially entitled to a very large credit, which supports the requirement that Claimant's financial situation should have been considered. *Id.* at 8-9 (emphasis in original). As to the remaining *Process Gas* criteria, the Court concluded Claimant would suffer irreparable harm absent supersedeas as the workers' compensation benefits were his sole source of income, Employer would not be harmed as it could still recover its monies, just over a longer period of time, and there was no evidence public interest would be harmed if supersedeas relief was granted. *Id.* at 9-10.

It appears that in discussing this issue, which Claimant now adopts as part of his argument, the Court may have inadvertently transposed numbers and referred to Section 413(a) of the WC Act as being ambiguous instead of Section 314(a) of the Act, although it correctly quoted the language of Section 314(a).

10

may request the claimant attend an IRE to determine the degree of impairment[9] due to the work injury, which a claimant must attend. 77 P.S. § 511.3(1). If the IRE results in an impairment rating[10] that is less than 35% under the American Medical Association "*Guides to the Evaluation of Permanent Impairment*," sixth edition (second printing April 2009), a claimant's disability status could be changed to partial upon 60 days' notice as required by Section 306(a.3)(2), 77 P.S. § 511.3(2). Any claimant disputing the change can appeal the change in status pursuant to Section 306(a.3)(4), 77 P.S. § 511.3(4). The change in status from total to partial disability does not affect the amount of compensation paid. 77 P.S. § 511.3(3). Rather, the change in status limits a claimant to receiving 500 weeks of partial disability compensation. Section 306(b)(1) of the WC Act, 77 P.S. § 512(1); *Diehl v. Workers' Comp. Appeal Bd. (I.A. Constr.)*, 972 A.2d 100, 104-05 (Pa. Cmwlth. 2009).

Section 306(a.3)(6) provides:

> Upon request of the insurer, the employe shall submit to an independent medical examination in accordance with the provisions of section 314 to determine the status of impairment: Provided, however, That for purposes of this clause, the employe shall not be required to submit to more than two independent medical examinations under this clause during a twelve-month period.

77 P.S. § 511.3(6). Section 314(a) of the WC Act also requires a claimant to submit to a medical exam, if requested, and further provides the procedure to follow and remedy available when a claimant fails to do so. It provides:

---

[9] "[I]mpairment" is defined as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent." 77 P.S. § 511.3(8)(i).

[10] "[I]mpairment rating" is defined as "the percentage of permanent impairment of the whole body resulting from the compensable injury." 77 P.S. § 511.3(8)(ii).

11

**At any time after an injury the employe, if so requested by his employer, must submit himself at some reasonable time and place for a physical examination** or expert interview by an appropriate health care provider or other expert, who shall be selected and paid for by the employer. **I**f **the employe shall refuse** upon the request of the employer, to submit to the examination or expert interview by the health care provider or other expert selected by the employer, **a [WCJ]** assigned by the [D]epartment [of Labor and Industry (department)] **may, upon petition of the employer, order the employe to submit to such examination** or expert interview at a time and place set by the [WCJ] and by the health care provider or other expert selected and paid for by the employer or by a health care provider or other expert designated by the [WCJ] and paid for by the employer. The [WCJ] may at any time after such first examination or expert interview, upon petition of the employer, order the employe to submit himself to such further physical examinations or expert interviews as the [WCJ] shall deem reasonable and necessary, at such times and places and by such health care provider or other expert as the [WCJ] may designate; and in such case, the employer shall pay the fees and expenses of the examining health care provider or other expert, and the reasonable traveling expenses and loss of wages incurred by the employe in order to submit himself to such examination or expert interview. **The refusal or neglect, without reasonable cause or excuse, of the employe to submit to such examination** or expert interview **ordered by the [WCJ]**, either before or after an agreement or award, **shall deprive him of the right to compensation**, under this article, **during the continuance of such refusal or neglect, and the period of such neglect or refusal shall be deducted from the period during which compensation would otherwise be payable.**

77 P.S. § 651(a) (emphasis added).

With this backdrop in mind, we turn to the instant matter. It is undisputed that Employer requested Claimant attend an IRE, Claimant refused, Employer filed a petition seeking an order from a WCJ to attend that IRE, the WCJ issued such an order, and Claimant did not comply with that order. At issue is whether Claimant was required to comply with the order and attend the IRE when Claimant's appeal

12

of that order was still pending with the Board, and assuming the Claimant was required to attend the IRE, what the consequence of noncompliance should be.

With regard to the first issue, Claimant argues the Court's decision in *Bechtel* controls and required dismissal of Employer's Suspension Petition as premature because Claimant was in the process of appealing the WCJ's order to attend the IRE. In *Bechtel*, a referee[11] granted a claim petition, awarding the claimant disability benefits for injuries he sustained in the course of his employment. The employer appealed the decision to the Board and, while the appeal was pending, the employer filed a termination petition, which was dismissed as prematurely filed. Faced with this "procedural quagmire," the Court aptly identified the narrow issue on appeal as whether an employer should "be permitted to attack the referee's finding of disability, alleging that no disability occurred, while at the very same time petitioning for termination of benefits alleging that the disability has ceased[.]" *Bechtel*, 452 A.2d at 287-88. The Court answered the question in the negative, reasoning that it "would contravene the [WC] Act's established appeal process,[] making proceedings subject to collateral attack at any time," which was "not conducive to judicial or administrative economy." *Id.* at 288 (footnote omitted). We further explained the "evil" of "unnecessary and counter-productive relitigation of identical issues" was avoided by this result. *Id.* Accordingly, we affirmed the Board's order dismissing the termination petition as premature.

Subsequently, in *Gieniec v. Workers' Compensation Appeal Board (Palmerton Hospital)*, the Court explained that, pursuant to *Bechtel*, a second petition should not be entertained if it is premature, meaning "it depended on the outcome of the appeal" of the first petition, or the second petition raised issues

---

[11] WCJs were formerly known as referees.

13

identical to those already on appeal, meaning the same arguments and evidence are presented. *Gieniec*, 130 A.3d 154, 158-59 (Pa. Cmwlth. 2015). We also explained that *Bechtel* had been expanded to preclude a party from taking a position that is not consistent with the position on appeal. *Id.* at 158.

More recently, the Court held that *Bechtel* did not preclude litigation of an employer's modification petition, which was filed while the claimant's reinstatement petition was still pending. *Hutchinson v. Annville Township (Workers' Comp. Appeal Bd.)*, 260 A.3d 360, 365 (Pa. Cmwlth. 2021). In *Hutchinson*, the employer filed a modification petition based upon an IRE that the claimant underwent in January 2019 pursuant to Act 111, which the claimant contended was premature because the employer's modification petition preceded disposition of a reinstatement petition that the claimant had previously filed following the Supreme Court's invalidation of the prior IRE provisions. In concluding *Bechtel* did not apply, the Court determined the two petitions did not raise identical issues. *Id.* at 365. The Court reasoned the claimant's reinstatement petition raised the legal question of when total disability status should be reinstated based upon the former IRE provisions being declared unconstitutional, whereas the employer's modification petition raised the factual question of the degree of the claimant's impairment under the new IRE. *Id.* at 365-66.

For similar reasons as in *Hutchinson*, we hold *Bechtel* is inapplicable to Claimant's appeal. While related, the issues in Claimant's appeal were not identical to the issues before the WCJ in the Suspension Petition proceedings. In the former proceeding, Claimant was challenging the constitutionality of the IRE provision in Act 111, which is a legal issue, whereas in the latter, the issue, as the Board observed, was whether Claimant attended the IRE and if not, if he had a reasonable excuse for

14

not doing so, which is a mixed question of law and fact. Nor was the Suspension Petition premature; rather, Claimant's appeal of the WCJ's order directing him to attend the IRE was. As the Board correctly noted and this Court subsequently held in *Edinger I*, Claimant's initial appeal was of an interlocutory order. It is well settled that an "interlocutory appeal . . . is not a reasonable excuse for [a claimant's] failure to comply with" an order directing the claimant to attend a medical examination. *Bradley*, 919 A.2d at 295. Moreover, unlike in *Bechtel*, no party is taking an inconsistent position in the two different proceedings. Employer's position was, and remains, that Claimant was required to attend the IRE, and Claimant's position was, and remains, that he does not. Finally, Claimant would not lose his right to appeal if the Suspension Petition proceeded, as the WCJ subsequently found. Rather, as the WCJ originally found, Claimant would be able to raise his constitutional claims to the Board in the normal course, if and when Employer sought to modify Claimant's disability status based upon the results of the IRE and the WCJ issued a final, appealable decision. Thus, we agree with the Board that the WCJ erred, as a matter of law, in finding *Bechtel* precluded litigation of Employer's Suspension Petition while Claimant's interlocutory appeal was pending.

Moreover, we note that Claimant did not seek supersedeas of the WCJ's order directing him to attend the IRE. In *McCormick*, the claimant was ordered to attend an independent medical examination (IME), and while that appeal was pending, did not attend the IME, resulting in the employer filing a petition to suspend. The WCJ granted the petition to suspend, finding the claimant did not proffer reasonable cause for not attending. On appeal to this Court, the claimant argued the appeal of the WCJ's order effectively stayed the order compelling the IME and constituted reasonable cause and excuse for not attending. We rejected this argument, holding

15

an appeal does not automatically stay an order unless there is a specific provision granting automatic supersedeas, and here there was not. *McCormick*, 734 A.2d at 477-78. *See also Bradley*, 919 A.2d at 295. Claimant also asserts that because the WCJ's order directing that he attend the IRE did not suspend Claimant's benefits, he could not have sought supersedeas. (Claimant's Br. at 15-16.) We are not persuaded by Claimant's argument as he cites no legal support for this argument.

For the first time in his reply brief, Claimant also argues Employer, under the WC Act, could have, and presumably should have, immediately stopped Claimant's benefits when he did not attend the IRE as ordered and, because Employer did not do so, it is barred from recovering against his future benefits based on past conduct. As it does not appear Claimant raised this issue until now, it is arguably waived. *See McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.)*, 903 A.2d 94, 101 (Pa. Cmwlth. 2006). Regardless, we are not persuaded by Claimant's argument. "[A]n employer has no right to suspend benefits for a claimant's failure to attend an exam without first having obtained an order" directing the claimant to attend the exam. *Maranc v. Workers' Comp. Appeal Bd. (Bienenfeld)*, 751 A.2d 1196, 1201 (Pa. Cmwlth. 2000). *See also Robb v. Workers' Comp. Appeal Bd. (Dep't of Pub. Welfare)*, 718 A.2d 875, 881 (Pa. Cmwlth. 1998) ("[O]nce the WCJ has issued an order requiring the claimant to attend an [exam], a subsequent refusal by the claimant to attend the exam, without reasonable cause or excuse, gives the WCJ the authority to suspend [the c]laimant's benefits as of the date on which the [c]laimant was to attend the [exam].") (emphasis omitted); *Blair v. Workmen's Comp. Appeal Bd. (Fullington Bus Co.)*, 471 A.2d 1289, 1292 (Pa. Cmwlth. 1984) ("Although [S]ection 314 is not free of ambiguity, we believe that the legislature intended that a referee, not an employer, determine if an employee had reasonable cause or excuse

16

for not submitting to a board-ordered examination. Thus, only a referee can deduct compensation under [S]ection 314.") Thus, Employer followed the appropriate procedure here to initiate suspension of Claimant's benefits.

Next, Claimant argues that the Board erred in awarding a dollar-for-dollar credit against future compensation benefits and, relatedly, should have considered his financial situation first. He contends the Board's Order is contrary to this Court's decision in *Fahringer*. In *Fahringer*, an NCP incorrectly listing the claimant's average weekly wage was issued, which resulted in the claimant receiving a larger benefit amount than he was entitled. The parties later entered into a supplemental agreement related to partial disability benefits. The error went undetected for approximately six years, resulting in an overpayment of more than $18,000, which the employer sought to recoup. 529 A.2d at 58. The referee modified the parties' supplemental agreement, but refused to order recoupment of the $18,000 on the basis of equitable estoppel, and the Board affirmed. *Id.* We held equitable estoppel did not apply as there was no justifiable reliance in the employer miscalculating the claimant's own wages; however, we did find there was unjust enrichment. We explained that "[t]he doctrine of unjust enrichment is an equitable one; the Board, however, does not have its roots in equity. While we do not believe that this fact precludes the Board from employing certain equitable principles, its use of such principles must be restricted in light of its statutory constraints." *Id.* at 59. The statutory constraints were found in Section 413(a) of the WC Act, which provides an NCP or an agreement between the parties could be modified or set aside at any time if it "was in any material respect incorrect." *Id.* at 58 (quoting 77 P.S. § 771). Thus, we concluded the Board could invoke Section 413(a) to modify an award if there was a mathematical miscalculation or it was correcting an error to existing

17

agreements. *Id.* at 58-59. Since the original agreement was no longer in effect, we held the employer could not recover for any overpayment made under that agreement, but it could recover any overpayment made pursuant to the supplemental agreement. *Id.* at 59. However, in making such an award, we directed the Board to first take into consideration Claimant's financial circumstances. *Id.*

Here, the Board did not proceed under Section 413(a). Rather, it acted in accord with Section 314, which provides the remedy when a claimant does not appear for a scheduled examination. Section 314 expressly provides for the relief the Board granted here:

> The **refusal** or neglect, **without reasonable cause or excuse**, of the employe to submit to such examination or expert interview ordered by the [WCJ], either before or after an agreement or award, **shall deprive him of the right to compensation**, under this article, during the continuance of such refusal or neglect, **and** the period of such neglect or refusal **shall be deducted from the period during which compensation would otherwise be payable.**

77 P.S. § 651(a) (emphasis added); *see also Lukens Steel*, 524 A.2d at 1043 (noting that employer is not entitled to reimbursement from the Supersedeas Fund and Section 314, which had remained unchanged since its enactment, "gives the employer only the right to charge against future payments, if any"). Thus, as in cases where there was an error or miscalculation under Section 413(a), Section 314 also provides a statutory basis for the Board to remedy an employer's harm when a claimant does not appear, as ordered, for a medical examination. Therefore, the Board had the authority to award the relief it did.

This result is also consistent with our holding in *Linton*, where the claimant refused to submit to an expert interview with a vocational representative after being ordered by a WCJ to do so. A WCJ ultimately suspended the claimant's benefits,

noting that the claimant had avoided the interview for two years through litigating the matter, finding the claimant was unjustly enriched as a result, and directing a dollar-for-dollar recoupment by the employer. *Linton*, slip op. at 5.

Finally, Claimant argues the Board erred in not considering Claimant's financial circumstances, also in violation of *Fahringer*, wherein the Court held the Board should have considered the claimant's financial situation when fashioning its recoupment remedy. 529 A.2d at 59. As discussed above, *Fahringer* involved an incorrect AWW, which resulted in the claimant receiving a substantial overpayment. Claimant cites no cases where the Court has applied the equitable principle of *Fahringer* to a situation where a claimant refused to attend a medical exam, such as here, nor could the Court find any. The Act specifically provides for a credit in such situations, *see* 77 P.S. § 651(a), and we "have no authority to add or insert language into a statute and should not, through interpretation, add a requirement that the General Assembly did not include," *Township of Washington v. Township of Burrell*, 184 A.3d 1083, 1089 (Pa. Cmwth. 2018) (internal quotation and citation omitted). Although the Act is humanitarian in nature, the Supreme Court has recently cautioned this Court about "engraft[ing] onto the Act a requirement" not in the Act in order "[t]o remedy [a] perceived infirmity." *Keystone RX LLC v. Bureau of Workers' Comp. Fee Rev. Hearing Off. (CompServices, Inc./Amerihealth Casualty Servs.)*, 265 A.3d 322, 329 (Pa. 2021). In the absence of some authority to do so, the Court declines to extend the equitable principles applied where there was an inadvertent error in *Fahringer* to cases such as this where a claimant, without reasonable cause or excuse, refuses to attend a medical examination that a WCJ ordered the claimant to attend.

19

## IV. CONCLUSION

In summary, the Board did not err in suspending Claimant's disability benefits after Claimant failed to attend an IRE as ordered by the WCJ. Although Claimant was in the process of appealing that order, it was an interlocutory order, which did not operate as an automatic supersedeas, and Claimant did not separately seek supersedeas. Furthermore, pursuant to this Court's precedent, failing to attend the IRE under these circumstances did not serve as reasonable cause or excuse for not attending as directed. Moreover, the Board did not exceed its authority by awarding Employer a dollar-for-dollar credit as Section 314 of the WC Act provides for this exact relief. Accordingly, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lloyd Edinger,            :
         Petitioner      :
                     :
        v.             :    No. 916 C.D. 2021
                     :
Rhodes Salvage/Edward Rhodes   :
(Workers' Compensation Appeal    :
Board),                          :
         Respondent    :

# O R D E R

**NOW**, April 25, 2023, the Order of the Workers' Compensation Appeal Board, in the above-captioned matter, is **AFFIRMED.**

 

_____
**RENÉE COHN JUBELIRER,** President Judge